UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNARD ANYE NCHE,<br><br>                                    Petitioner,<br><br>v.<br><br>PATRICK, DIVVER, Field Office Director of Enforcement and Removal Operations, San Diego Field Office, Immigration and Customs Enforcement; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; TODD BLANCE, U.S. Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; CHRISTOPHER J. LAROSE, Warden of Otay Mesa Detention Facility,<br><br>                                    Respondents. | Case No.: 26–cv–2449–JES–DDL<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 8 U.S.C. § 2241**<br><br>**[ECF No. 1]** |

Before the Court is Petitioner Bernard Anye Nche's ("Petitioner") Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241 ("Petition"). ECF No. 1, ("Pet."). Pursuant to the Court's Order to Show Cause, Respondents (the "Government") filed the Return.

//

1

ECF No. 4 ("Ret."). The Court now takes the matter under submission. For the reasons set forth below, the Court **GRANTS** the Petition.

## I. BACKGROUND

Petitioner, a 31–year–old native and citizen of Cameroon, entered the United States near Tecate, California on or about October 16, 2025, without inspection or parole. Pet. at 5; ECF No. 1–4 at 2; Ret. at 2. Thereafter, he was taken into Immigration and Customs Enforcement ("ICE") custody, deemed inadmissible, and placed into expedited removal proceedings. ECF No. 4–1 at 2–4, ("Form I–213"). On January 30, 2026, Petitioner filed an application for asylum, withholding of removal, and relief under the Convention Against Torture. Pet. at 5; Ret. at 2. Petitioner was initially issued a negative credible fear determination but an Immigration Judge ("IJ") vacated that determination. Ret. at 2.  This resulted in the initiation of removal proceedings under 8 U.S.C. § ("Section") 1229(a) against Petitioner, who was then issued a Notice to Appear. ECF No. 1–4 at 1.

On January 22, 2026, the Department of Homeland Security ("DHS") filed a motion to pretermit Petitioner's asylum application on the basis that the U.S.–Uganda Asylum Cooperative Agreement ("ACA") required removal to Uganda, rather than adjudication of Petitioner's claims on the merits. Ret. at 2–3; ECF No. 1–5 at 1–2. On March 30, 2026, an IJ granted DHS' motion, pretermitted Petitioner's asylum application, and ordered him removed to Uganda—a country he has never visited, has no family in, and with which he has no ties. ECF No. 1–5 at 2–3. On April 1, 2026, Petitioner filed a timely appeal with the Board of Immigration Appeals ("BIA"), which is actively pending. ECF No. 1–7 at 1; Ret. at 3.

Despite having no criminal record or any prior immigration violations, Petitioner has been mandatorily detained at Otay Mesa Detention Center ("OMDC") continuously since October 16, 2025—over a six and half month period. Form I–213; Pet. ¶ 9. As Petitioner has never received an individualized bond hearing while in immigration custody, he seeks habeas relief from the Court. Pet. 12–13.

//

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration–related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

Habeas corpus is "perhaps the most important writ known to the constitutional law ... affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## III.    DISCUSSION

Petitioner alleges that his continued detention, without an individualized bond hearing, violates the Due Process Clause of the Fifth Amendment. Pet. at 6–7. In its Return, the Government argues that Petitioner is lawfully detained under Section 1225(b)(1)(B)(ii); and his detention has not become unconstitutionally prolonged. Ret. at 4–10. The Court addresses both arguments in turn.

The Court recently addressed these issues in *Sandesh v. LaRose*, No. 26–CV–0846–JES–DDL, 2026 WL 622690, at *1–6 (S.D. Cal. Mar. 5, 2026). The Court elects to follow that same rationale here and incorporates it by reference.

26-cv-2449-JES-DDL

**A.     Jurisdiction**

While the Government does not contest the Court's jurisdiction over this matter, the Court finds it prudent to ensure it may hear this Petition. *See generally* Ret. Petitioner, here, is challenging the conditions and duration of his detention, not the decision to commence or carry out removal proceedings. Pet. at 6-12. Accordingly, the Court finds that Section 1252's jurisdiction stripping provisions do not bar this Court from considering Petitioner's claims. *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). Thus, the Court holds that it has jurisdiction over this Petition. *See Martinez Lopez v. Noem et al.*, No. 25–cv–2717–JES–AHG, 2025 WL 3030457, at *2–3 (S.D. Cal. Oct. 30, 2025).

**B. Petitioner Is Properly Detained Under Section 1225(b)**

The Court agrees with Respondents that Petitioner is subject to mandatory detention under Section 1225(b)(1)(B)(ii). Ret. at 5–6. Petitioner was apprehended near the U.S.–Mexico border without valid entry documents. Ret. at 2; ECF No. 4–1 at 6. He was found to be an "applicant for admission," as defined by Section 1225(a)(1), and following his positive credible fear determination, is subject to detention "for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii); *Jennings*, 583 U.S. at 297. Since being apprehended, he has not been granted any form of parole. Ret. at 6.

The Court, therefore, finds that Petitioner is appropriately detained under Section 1225(b). *See Jennings*, 583 U.S. at 287; *see also Sandesh*, 2026 WL 622690, at *2.

**C. The *Banda* Factors Weigh in Favor of Ordering a Bond Hearing**

This Court, along with numerous others within this Circuit, has found that a noncitizen's prolonged mandatory detention will, at some point, raise due process considerations. *Sandesh*, 2026 WL 622690, at *2–3. Courts consider the following factors to determine whether a noncitizen's prolonged detention under Section 1225 is unconstitutional:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings

26-cv-2449-JES-DDL

caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019). The Court now turns to apply this test.

### (1) Length of Detention

The first *Banda* factor, total length of detention, is "the most important factor." *Id.* "Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable" *Amado v. United States Dep't of Just.*, No. 25–CV2687–LL (DDL), 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025) (finding detention of thirteen months to weigh in favor of the petitioner); *Sadeqi v. LaRose*, No. 25–CV–2587–RSH–BJW, 2025 WL 3154520, at *3 (S.D. Cal. Nov. 12, 2025) (finding that although "almost 12 months" detention was not dispositive, factor does weigh in favor of petitioner); *Gao v. LaRose*, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025) ("The Court finds that Petitioner's detention for over 10 months without a bond hearing, in the context of the specific circumstances described above, has become unreasonable and violates due process."); *Tonoyan v. Andrews*, No. 1:25–CV–00815–SKO (HC), 2025 WL 3013684, at *4 (E.D. Cal. Oct. 28, 2025) ("Petitioner has been detained approximately 11 months. This period . . . qualifies as prolonged."); *Gonzalez v. Bonnar*, No. 18–cv–05321–JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) ("In general, '[a]s detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.'") (citation omitted).

Courts have found this factor to be neutral where petitioners were, at the time of review, subjected to shorter periods of detention. *See Odimara v. Bostock*, No. 2:24–CV–572–JHC–GJL, 2024 WL 3862256, at *6 (W.D. Wash. July 12, 2024) (finding length of detention neutral or "slightly in favor of granting a bond hearing" where petitioner had been detained "approximately six months"); *Islamov v. Doe*, No. 26–cv–01528–JES–VET, 2026 WL 1179873, at *4 (S.D. Cal. April 30, 2026) (finding that first *Banda* factor to

26-cv-2449-JES-DDL

slightly weigh in favor of petitioner that had "been in ICE custody for just over six months.").

Petitioner has been continuously detained since October 25, 2025. ECF No. 5–2 at 2. As of the date of this Order, the length of Petitioner's detention has exceeded six months. In *Islamov* the Court found that under similar circumstances, the first *Banda* factor weighed slightly in petitioner's favor. 2026 WL 1179873, at *4. The Court finds the same here.

### (2) Likely Duration of Future Detention

The second *Banda* factor considers the "anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119. Petitioner's BIA appeal is pending, thus, there is currently no administrative final order of removal. Ret. at 3. If the BIA affirms the IJ's order, Petitioner is likely to pursue Ninth Circuit review. The full appellate cycle "may take up to two years or longer." *Banda*, 385 F. Supp. 3d at 1119; *see also Abdul Kadir*, 2025 WL 2932654, at *5 (finding this factor favored petitioner where "future detention can last several more months or even years"). Thus, this factor weighs in favor of Petitioner.

### (3) Conditions of Detention

"The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). The Government does not address this factor in its Return. Petitioner has been held at OMDC for several months. Form I–213. Courts have recognized that the conditions at OMDC are "indistinguishable from penal confinement." *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 773 (S.D. Cal. 2020); *Amado*, 2025 WL 3079052, at *6. Considering OMDC's conditions, Petitioner's argument that he is entitled to a bond hearing is very strong. *See Banda*, 385 F. Supp. 3d at 1119; *see also Kydyrali*, 499 F. Supp. 3d at 773. Accordingly, this factor weighs heavily in favor of Petitioner.

//

//

26-cv-2449-JES-DDL

**(4) Delays Caused by the Detainee; and (5) Government**

The fourth and fifth *Banda* factors examine delays attributable to the petitioner and the Government, respectively. *Banda*, 385 F. Supp. 3d at 1119–20. The record reflects that Petitioner moved his case forward expeditiously and complied with every filing deadline. Pet. at 10. The Government does not identify any delays attributable to Petitioner in its Return. Ret. at 9. Therefore, the fourth *Banda* factor is neutral.

The Government, however, did not file its motion to pretermit until January 22, 2026, more than two months after it initiated removal proceedings, on November 18, 2025. Ret. at 2–3. This delay arguably slowed proceedings and extended Petitioner's detention. Thus, to the extent the Government's filing delay contributed to Petitioner's prolonged detention, the fifth *Banda* factor slightly weighs in Petitioner's favor.

**(6) Likelihood of a Final Order of Removal**

The sixth factor looks to the likelihood that the removal proceedings will result in a final order of removal. *Banda*, 385 F. Supp. 3d at 1120 ("In other words, the Court considers whether the noncitizen has asserted any defenses to removal.").

Here, an IJ has already ordered Petitioner removed to Uganda, based on the ACA. ECF No. 1–5 at 2–3. In response, Petitioner filed a BIA appeal challenging, *inter alia*, the IJ's pretermission of his claims for relief and the propriety of Uganda as a designated third country for removal. ECF No. 1–7 at 1. Determining the outcome of Petitioner's immigration proceedings will require an individualized, fact–intensive analysis. The Court is, however, in no position to assess the merits of his claim for relief, at this stage or on this record. Thus, the Court finds this factor is neutral.

In sum, all but two *Banda* factors weigh in favor of Petitioner. Those that do not are neutral. These circumstances lead the Court to find that Petitioner's detention has become unreasonable and due process requires that he be afforded an individualized bond hearing. *See Sandesh*, 2026 WL 622690, at *2–3; *see also Banda*, 385 F. Supp. 3d at 1117–20.

//

//

26-cv-2449-JES-DDL

**D. Due Process Requirements for a § 1225(b) Bond Hearing**

The Court has previously held—and does so again, here—that the proper standard at a bond hearing ordered after a prolonged detention is found to violate the Fifth Amendment requires the Government to show, by clear and convincing evidence, that the detainee is a flight risk or poses a danger to the community. *See Singh v. Holder*, 638 F. 3d 1196, 1200, 1203, 1208 (9th Cir. 2011); *Sandesh*, 2026 WL 622690, at *2-3.

It is imperative that the legal standard set forth in *Singh* is applied by the IJ to properly effectuate this Court's Order for a constitutionally sufficient bond hearing. Doing so protects the critical liberty interests and the due process rights of such individuals. *See, e.g., Banda*, 385 F. Supp. 3d at 1120; *Belqasim v. Bostock*, No. 2:25-CV-01282-LK-TLF, 2025 WL 3466971, at *10 (W.D. Wash. Oct. 28, 2025); *Gao*, 805 F. Supp. 3d at 1112.

## IV.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus, and **ORDERS** as follows:

(1)    The Court **ORDERS** Respondents to provide Petitioner with an individualized bond determination hearing within **ten days** of this Order.

    a. At the hearing, the Government **SHALL BEAR** the burden of establishing by clear and convincing evidence that Petitioner is a danger to the community or a flight risk if he were to be released.

    b. Respondents **SHALL** make a complete record of the bond hearing available to Petitioner and his counsel.

(2)    Respondents are **ORDERED** to File a Notice of Compliance within **five days** of providing Petitioner with the bond hearing, including apprising the Court of the results of the hearing.

//

//

//

26-cv-2449-JES-DDL

(3)     The Clerk of Court is **DIRECTED** to **CLOSE** this case

**IT IS SO ORDERED.**

Dated: May 1, 2026

_____

Honorable James E. Simmons Jr.
United States District Judge

26-cv-2449-JES-DDL